IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

JANE DOE NO. 1, et al.,

   Plaintiffs,

    v.

FULTON-DEKALB HOSPITAL
AUTHORITY, doing business as
Grady Health System, et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:05-CV-2277-TWT

ORDER

This is an action for sexual harassment. It is before the Court on the Motion for Summary Judgment of Defendants Fulton-DeKalb Hospital Authority, Robert Rohr, William Reed, Anthony Stovall and Venus Upshaw [Doc. 352] and the Plaintiffs' Motion for Partial Summary Judgment [Doc. 358]. For the reasons set forth below, the Defendants' motion is GRANTED and the Plaintiffs' motion is DENIED.

I. BACKGROUND

The Plaintiffs, Jane Doe Nos. 1, 2, and 3, are former patients in the Drug Dependence Unit ("DDU") at Grady Hospital. They contend that one of Grady's substance abuse counselors, Defendant Steven Kimbrell, sexually harassed them during their counseling sessions with him in the time period between Fall 2004 and

Spring 2005. They further claim that Grady and several of its employees violated their rights by hiring and retaining Kimbrell despite a history of sexual harassment from previous employment and evidence that he was continuing that behavior at Grady. The relevant facts are as follows.

In July 2004, Kimbrell applied for a counseling job at Grady. At that time, he had held several different jobs in the five previous years.[1] From 1999 until 2001, he was employed by New Horizons Recovery Center in Huntsville, Alabama. He was terminated from this position after a patient complained that he had engaged in inappropriate sexual discussions during counseling. (Kimbrell Dep., Ex. 3, ¶¶ 62-63; Upshaw Dep., Ex. 1.) His next employment was at New Horizons Community Service Board in Columbus, Georgia, where he worked from 2001 until 2003. He was accused in May 2003 by a patient of offering her money in exchange for sex, and he subsequently resigned. (Robertson Dep. at 44; Ex. 1.) His Grady application stated, however, that he left in June 2003 to begin "contract work for self employment." (Stovall Dep., Ex. 1.) His next position was at a company called New Beginnings in McAllen, Texas, where he worked for approximately three months. His application stated that he left because the company was forced to close. Id. His last place of

---

[1] Although Grady's employment application requested work history for the previous ten years, Kimbrell provided only his last three jobs, which covered approximately three years. (Stovall Dep., Ex. 1.)

employment prior to applying at Grady was with American Psychiatric Partners ("APP"), where he worked at an adolescent substance abuse treatment facility in Rome, Georgia. He was fired from the position after he requested that an adolescent female patient sit on his lap during a counseling session. (Kimbrell Dep., Ex 1; Ex. 3, ¶¶ 64-65.) Kimbrell did not tell Grady that he had ever even been accused of sexual misconduct.

Prior to his hiring, Kimbrell was interviewed by Grady employees Venus Upshaw, the Clinical Director of the DDU, and Terry Bones, the DDU's Senior Counselor. Upshaw claims that Kimbrell's frequent changes of employment over such a short period of time were a source of concern for her, and she asked him what his former employers would say about him and whether he was "eligible to go back there." (Upshaw Dep. at 20-21, 24-25.) She claims that he told her that his employers would say "all good things" about him and he would be eligible for rehire at all of the places he had worked. (Id. at 21, 24-25.) Kimbrell denies, however, being asked any direct questions about whether he was terminated from any of these positions or whether he had ever been accused of misconduct. (Kimbrell Dep. at 48-49.)

Grady contends that following this interview, but prior to his hiring, one of its Human Resources recruiting assistants, Kimberly Clark, attempted to contact all three of the former employers listed by Kimbrell. Despite repeated attempts, however, she

claims that she was able to speak only to a representative at New Horizons in Columbus. According to the referral reference form she completed for this contact, this individual provided Kimbrell's employment dates and his title but no other information. (Stovall Dep., Ex. 16.) Grady also completed a criminal background check and a drug screen on Kimbrell, each of which failed to produce any negative information about him. His personnel file further contains records of his license as a Certified Addiction Counselor II and a copy of his diploma. (Rohr Decl. II, ¶ 8; Ex. 1.) Based on this information, Grady hired Kimbrell in July 2004. He subsequently began counseling at Grady and continued until his suspension on April 4, 2005, for violation of Grady's standards of behavior.

The Plaintiffs filed this lawsuit on August 31, 2005, claiming several violations of federal and state law arising out of Kimbrell's alleged sexual harassment of each of them. In addition to Grady, Kimbrell, and Upshaw, the action included the following individuals as Defendants: Robert Rohr, Director of Employee Relations for Grady; William Reed, Director of the Department of Mental Health Services, of which the DDU is a part; and Anthony Stovall, Grady's Manager/Senior Staff Recruiter in the HR Department. The Court has since dismissed several of the Plaintiffs' claims. The following claims remain: (1) an equal protection claim against Kimbrell; (2) sexual harassment against Kimbrell; (3) professional negligence against

Kimbrell; (4) negligent hiring and negligence per se against Grady, Rohr, Stovall, Reed, and Upshaw; (5) negligent supervision and retention against Grady and Upshaw; (6) intentional infliction of emotional distress against Kimbrell; and (7) a claim for attorneys fees against all Defendants. Grady, Rohr, Stovall, Reed and Upshaw now move for summary judgment on the claims remaining against them. Two of the Plaintiffs move for summary judgment against Kimbrell as to the professional negligence claim. All of the Plaintiffs move for summary judgment against Grady on the negligent hiring and negligence per se claims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. DISCUSSION

### A. Negligent Hiring and Negligence Per Se

The Plaintiffs allege that Grady and the individual Defendants failed to perform a sufficient background check on Kimbrell, and that they were negligent in hiring him for the position of substance abuse counselor. In Georgia:

> [A] defendant employer has a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable from the employee's "tendencies" or propensities that the employee could cause the type of harm sustained by the plaintiff. The employer is subject to liability only for such harm as is within the risk.

Munroe v. Universal Health Servs., Inc., 277 Ga. 861, 863 (2004) (citations omitted). In Munroe, a patient was drugged and raped by an employee at one of the defendant's facilities. She claimed that the defendant was negligent in hiring and retaining this employee. The record demonstrated that the defendant had used a private investigation service to perform a criminal background search on this employee and found that he had no record. The investigation further reported, however, that this employee had misrepresented the reasons behind his termination from a previous job and that it could find no records on him at the high school from which the employee claimed to have graduated. Id. at 865. The investigation also failed to confirm the existence of two prior employers listed on his application, "one of which had operated the facility where [the employee] gained personal care experience Universal

considered critical to his employment as a mental health assistant." Id. The direct supervisor with whom the employee should have interviewed before being hired could not recall interviewing him and "did not obtain the independent confirmation she felt was needed regarding [his] job at the bankrupt employer." Id. Nor was he ever required to explain the mistakes in his application. Despite these alleged shortcomings in the employer's investigative process, the Georgia Supreme Court determined that summary judgment for the defendant was appropriate because it had performed a background check, it had no reason to question the accuracy or thoroughness of the information provided in that check, and the check did not reveal any record of criminal activity. Id. The Georgia Supreme Court concluded that no genuine issue for trial existed because there was "plain, palpable and undisputable" evidence that the defendant was not liable for the injuries to the plaintiff. Id.

In this case, it is undisputed that Grady attempted to contact Kimbrell's three previous employers. Two did not respond and the one that did provided no negative information about him. The criminal background check was negative. Mere mistakes and incomplete or inaccurate information in an employment application are not sufficient to impose liability upon the employer. Munroe, 277 Ga. at 865. Whether a more thorough background investigation would have revealed that Kimbrell was an unsuitable employee requires entry into the realm of speculation and conjecture.

Accordingly, Grady is entitled to summary judgment as to this claim. The individual Defendants cannot be liable because they were not Kimbrell's employer.

The Plaintiffs also contend that the Defendants' violation of a Georgia Department of Human Resources regulation constituted negligence per se. "[G]enerally, negligence per se arises when a statute or ordinance is violated. The violation of certain mandatory regulations may also amount to negligence per se if the regulations impose a legal duty." Hubbard v. Department of Transp., 256 Ga. App. 342, 349-50 (2002). Negligence per se requires consideration of:

> (1) whether the injured person falls within the class of persons it was intended to protect and (2) whether the harm complained of was the harm the statute was intended to guard against. Finally, if the court finds negligence per se, the plaintiffs must then demonstrate a causal connection between the negligence per se and the injury. It is generally a jury question as to whether or not such negligence proximately caused the injury.

Id. at 350. See also Central Anesthesia Assocs., P.C. v. Worthy, 254 Ga. 728, 730 (1985) (stating that a finding of negligence per se "supplies only the duty and breach of duty elements of a tort, and the plaintiffs must still prove a causal connection (proximate cause) between the breach of this statutory duty and the injuries sustained ... as well as their damages").

Here, the Plaintiffs rely upon DHR Rule 290-9-12-.09(8)(b), which states that a "program shall maintain written and verified records for each employee. Each

employee file shall include ... A five-year employment history or a complete employment history if the person has not worked five years." (emphasis added). They claim that the Defendants violated this regulation by failing to contact each of Kimbrell's employers for the past five years. In order demonstrate negligence per se, however, the Plaintiffs must show that the regulation at issue establishes a standard of conduct. In opposition, the Defendants cite Brown v. Belinfante, 252 Ga. App. 856 (2001), where the Georgia Court of Appeals examined a plaintiff's allegation that a dentist had exceeded the scope of the practice of dentistry by performing cosmetic surgery on her. She claimed that negligence per se was established by the defendant's violation of both the Georgia Dental Act and a Board of Dentistry regulation, Rule 150-8-.01(h), which provided that:

> [t]he Board has the authority to refuse to grant a license to an applicant [ ] or to discipline a dentist or dental hygienist licensed in Georgia if that individual has engaged in unprofessional conduct. For the purpose of the implementation and enforcement of this rule, unprofessional conduct is defined to include, but not be limited to, ... [a]ny departure from, or failure to conform to, the minimal standards of acceptable and prevailing dental practice.

Id. at 861. The appellate court concluded, however, that the issue of whether the defendant's acts fell within the conduct subject to discipline under the rule was one for the Board, not the courts. This regulation was thus not a standard of conduct and could not give rise to a claim of negligence per se.

The Georgia Court of Appeals holding in <u>Brown</u> is persuasive here.  The Board of Dentistry rule cited in <u>Brown</u> provides the Board with the authority to refuse to grant a dentistry license where the applicant fails to conform to minimum standards of acceptable practice.  The DHR regulations at issue here appear to have been constructed with a similar intent.  The rules make clear that their purpose "is to provide for the licensing and inspection of narcotic treatment programs," <u>see</u> Rule 290-9-12-.02, and that the DHR alone has the authority to suspend, revoke or refuse to grant a license where the licensee "fails to fulfill the requirements of these rules." Rule 290-9-12-.21(1).  Accordingly, any determination as to whether the Defendants violated the requirements for maintaining "verified" employment records is a matter for the DHR and not this Court.[2]  Summary judgment for the Defendants on the Plaintiffs' negligence per se claim is therefore appropriate.

    B. <u>Negligent Supervision and Retention</u>

Similar to a negligent hiring claim, Georgia's courts have held that negligent supervision and retention is demonstrated "only where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's 'tendencies' to engage in certain behavior relevant to the injuries allegedly incurred

---

[2]In fact, a DHR Office of Regulatory Services representative, Beverly Michael-Attinello, has testified that the employment history is usually completed solely by the applicant.  (Michael-Attinello Dep. at 22.)

by the plaintiff." Alexander v. A. Atlanta Autosave, Inc., 272 Ga. App. 73, 77 (2005). This claim is distinct from a negligent hiring allegation, however, in that it requires a showing based on evidence of the employer's knowledge after the tortfeasor employee was hired. See TGM Ashley Lakes, Inc. v. Jennings, 264 Ga. App. 456, 459-60 (2003). Here, the Plaintiffs cite Upshaw's admission that she was aware in January 2005 of Kimbrell's tendency to engage in conduct in the "gray" areas of the counselor's role. (Upshaw Dep., Ex. 2.) She has explained, however, that this conduct involved Kimbrell's reference to one of his patients as a "mother," which Upshaw construed as derogatory and felt was inappropriate. (Id. at 36-37.) The Plaintiffs also point to Upshaw's statement to Jane Doe No. 2, upon learning about her complaints concerning Kimbrell, that she "had a feeling" something was wrong. (Pls.' Resp. to Defs.' Mot. for Summ. J., at 42.) Upshaw has explained that she had received a phone call from Grady while she was traveling, which was atypical; and because it was the second call in a two week period, she thought something must have been wrong and expressed that to Jane Doe No. 2. (Upshaw Dep. at 43-45.) This evidence alone is insufficient to establish a genuine issue of fact as to whether Grady knew or should have known that Kimbrell was sexually harassing his patients prior

to April 2005. See Munroe, 277 Ga. at 865. Summary judgment on this claim is thus merited.[3]

    C. Professional Negligence.

Plaintiffs Jane Doe Nos. 1 and 3 have also moved for summary judgment on their professional negligence claim against Kimbrell. To establish professional negligence, the evidence presented by the plaintiff must show that the defendant failed to exercise the requisite level of professional skill and judgment necessary to comply with a standard of conduct within the professional's area of expertise. Bardo v. Liss, 273 Ga. App. 103, 104 (2005). Generally, the plaintiffs must provide expert testimony in order to win a judgment on their claim. See Department of Transp. v. Mikell, 229 Ga. App. 54, 57 (1997) ("[T]he claim is clearly one for professional negligence, and expert testimony would therefore be required at trial for plaintiffs to meet their burden notwithstanding defendants' failure to raise plaintiffs' failure to comply with OCGA § 9-11-9.1."). Kimbrell claims that the counseling techniques

---

[3]The Plaintiffs contend that this negligent supervision claim must survive because the Defendants failed to address it in their summary judgment motion. The Court does not agree. Counts Four and Five of the Complaint are captioned "Negligent Hire and Negligence Per Se" and "Negligent Supervision and Retention," respectively. The Defendants' brief includes a section entitled "Counts 4 and 5. Plaintiffs Cannot Establish a Cause of Action for Negligent Hire or Negligent Retention of Steven Kimbrell." (Defs.' Mot. for Summ. J., at 7.) This is sufficient to indicate that they are moving for summary judgment on the negligent supervision claim.

that he used were consistent with his training and education. This is enough to create a genuine issue of fact for trial. Summary judgment on this claim is inappropriate.

### C. Attorneys Fees

The Defendants also move for summary judgment on the Plaintiffs' claim for attorneys fees under O.C.G.A. § 13-6-11. This code section does not provide a separate cause of action, only additional relief for wrongs committed against the claimant. Gardner v. Kinney, 230 Ga. App. 771, 772-73 (1998). To recover under the statute, the claimant must put forward evidence upon which a jury could conclude that the other party acted in bad faith, was stubbornly litigious, or caused the claimant unnecessary trouble and expense. O.C.G.A. § 13-6-11. The Plaintiffs have provided no evidence upon which any reasonable jury could make such a finding. Accordingly, summary judgment is proper for the Defendants on this claim.

### IV. CONCLUSION

For the reasons set forth above, Defendants Grady, Rohr, Reed, Stovall and Upshaw's Motion for Summary Judgment [Doc. 352] is GRANTED. The Plaintiffs' Motion for Partial Summary Judgment [Doc. 358] is DENIED.

SO ORDERED, this 5 day of October, 2007.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge